| | | | |
|---|---|---|---|
| | CIVIL MINUTES – GENERAL | | 'O' |
| Case No. | 2:18-cv-01677-CAS(SKx) | Date | April 4, 2018 |
| Title | SECURITIES AND EXCHANGE COMISSION v. STEVEN J. MUEHLER ET AL. | | |

| | | | |
|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | |
| Catherine Jeang | Not Present | | N/A |
| Deputy Clerk | Court Reporter / Recorder | | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: | |
| Not Present | | Not Present | |

**Proceedings:** (IN CHAMBERS) - PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AGAINST STEVEN J. MUEHLER, CLAUDIA MUEHLER, ALTAVISTA CAPITAL MARKETS, LLC, ALTAVISTA PRIVATE CLIENT, LLC, AND ALTAVISTA SECURITIES, LLC (Dkt. 4, filed February 28, 2018)

## I. INTRODUCTION

On February 28, 2018, the Securities and Exchange Commission ("SEC") filed a civil enforcement action against defendants Steven J. Muehler ("Muehler"), Claudia Muehler ("C. Muehler"), Koorosh "Danny" Rahimi ("Rahimi"), AltaVista Capital Markets, LLC, AltaVista Private Client, LLC, and AltaVista Securities, LLC (collectively, the "AltaVista Companies"). Dkt. 1 ("Compl."). The SEC asserts claims against defendants for (1) violations of Section 5(c) of the Securities Act of 1933, 15 U.S.C. § 77q(a) (the "Securities Act"), for (2) violations of Sections 10(b), 15(a), and 20(e) of the Exchange Act of 1934, 15 U.S.C. § 78j(b), 78o, 78t (the "Exchange Act"), and for (3) violations of Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

The gravamen of the SEC's complaint is that defendants have been operating an unregistered broker-dealer and securities fraud scheme in contravention of the securities laws and a prior cease-and-desist order issued by the SEC against Muehler for similar misconduct in 2016. Compl. Ex. B ("SEC Order"). The SEC requests the Court to issue a preliminary injunction enjoining defendants Muehler, C. Muehler, and the AltaVista

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-01677-CAS(SKx) | Date | April 4, 2018 |
| Title | SECURITIES AND EXCHANGE COMISSION v. STEVEN J. MUEHLER ET AL. | | |

Companies from committing further violations of federal securities laws and from violating the cease-and-desist requirements of the SEC Order.[1]  Dkts. 4–17 ("Motion").

On March 6, 2018, defendants were served summons, a copy of the complaint, and a copy of the motion for preliminary injunction.  Dkts. 22–27.  On March 19, 2018, the SEC filed a notice of non-opposition to its motion for preliminary injunction.  Dkt. 28.

On April 2, 2018, the Court held oral argument.  Defendant appeared and did not provide any opposition in response to the tentative of the Court.

Having carefully considered the SEC's arguments, the Court finds and concludes as follows.

## II.   BACKGROUND

The SEC alleges the following facts.

### A.   The AltaVista Companies and the Current Scheme

The SEC alleges that Muehler and his wife, C. Muehler, co-founded the AltaVista Companies in late 2015 and continue to operate these companies out of their condominium in Marina Del Rey, California.  Compl. ¶¶ 12–17, 22–24, 36.  Despite Muehler disclaiming his ownership and management roles in the AltaVista Companies, the SEC alleges that Muehler maintains control of the AltaVista Companies and their operations, often treating them "as interchangeable parts of a single enterprise under his control."  Id. ¶¶ 37–39.

The SEC's primary allegation is that defendants have been engaging in the business of a broker-dealer through the instrumentalities of interstate commerce, offering unregistered securities on an unregistered "alternative trading system" ("ATS")[2] called

---

[1]   In its moving papers, the SEC notes that it is not seeking a preliminary injunction against Rahimi as his employment was terminated in February 2017, and he is not currently participating in the alleged scheme.  See Motion at 3 n.2.  For the purposes of this Order, the Court's reference to "defendants" does not include Rahimi.

[2]   An alternative trading system ("ATS") is an unregulated market where investors can buy and sell stock.  Id. ¶ 46.  Every ATS must be registered with the SEC.  Id.  The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-01677-CAS(SKx) | Date | April 4, 2018 |
| Title | SECURITIES AND EXCHANGE COMISSION v. STEVEN J. MUEHLER ET AL. | | |

the "Nanocap Market," and are committing these securities violations by making various false and misleading statements about the AltaVista Companies' experience, capabilities, and association with Muehler. Id. ¶¶ 4–8. Moreover, the SEC alleges that none of the defendants have ever registered with the SEC in any capacity.[3] Id. ¶¶ 14, 17, 22–24, 84–86. The SEC asserts that this "AltaVista scheme" is virtually indistinguishable from Muehler's previous scheme, the "Alternative Securities Market Group" ("ASMG") scheme, which was the subject of the prior SEC Order. Compl. ¶ 25, 27–28.

In particular, the SEC alleges that Muehler, with substantial assistance from his wife, C. Muehler, has been operating this unregistered broker-dealer scheme through the AltaVista Companies since November 2015, whereby the Companies solicit small business owners and potential investors. Id. ¶¶ 8, 25–26, 89, 91–94. Muehler allegedly induced customers into signing up for the AltaVista Companies' services by marketing the Companies as a combination of underwriting, broker-dealer, and ATS services that are well-established players in the securities industry and have connections to thousands of investors. Id. ¶¶ 43–44, 95. Since their inception, the AltaVista Companies have allegedly signed "Issuer Agreements" with more than 20 customers and have collected approximately $100,000 in fees for their unlawful services. Id. ¶ 70.

Through the Issuer Agreements, defendants allegedly purport to offer several services such as examining customers' financial statements and business plans, preparing securities offerings, identifying and screening potential investors, and marketing securities to investors. Id. ¶ 57. Defendants also assist customers in obtaining qualification from the SEC under Regulation A of the Securities Act, and allegedly offer to underwrite customers' offerings of Customer Preferred Stock. Id. ¶¶ 58, 61. Qualified customers' securities are then listed on the Nanocap Market that was created, developed, and operated by Muehler. Id. ¶¶ 45, 59. The Issuer Agreements also allegedly include a

---

SEC alleges that Muehler falsely markets the Nanocap Market as an "SEC-registered alternative trading system," but according to the SEC it has never been registered with the SEC. Id. ¶¶ 46–47.

[3] Defendant Rahimi was employed by the AltaVista Companies from March 2016 until February 2017. Compl. ¶ 19. Prior to joining AltaVista Companies, Rahimi was registered—and worked—as an investment advisor representative, and held Series 6, 7, 31, 63, and 66 licenses; but he has not registered with the SEC as a broker-dealer or investment advisor. Id. ¶¶ 20–21.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-01677-CAS(SKx) | Date | April 4, 2018 |
| Title | SECURITIES AND EXCHANGE COMISSION v. STEVEN J. MUEHLER ET AL. | | |

Minimum Investment Commitment guarantee that falsely promises that defendants can raise minimum levels of capitalization from investors, or, in the alternative, an AltaVista Investment Fund will purchase enough Customer Preferred Stock to meet the Minimum Investment Commitment. Id. ¶ 62–64. The SEC alleges that defendants falsely claim to have millions of dollars on hand in the "AltaVista Investment Funds;" however, the AltaVista Investment Funds allegedly have minimal assets and no investors. Id. ¶¶ 44, 63–64, 94. The SEC further alleges that as compensation for these purported services, defendants have received upfront fees ranging from $10,000 to $20,000; monthly fees ranging from $400 to $1,500 per month; "Broker-Dealer Fees" equal to a certain percentage of the funds raised from investors; and, an equity interest in each issuer customer upon the occurrence of certain milestones in the process of successful capitalization. Id. ¶¶ 67, 69.

The SEC asserts that Muehler has been personally involved with providing services to customers by structuring proposed offerings of customers' securities, drafting and submitting Regulation A offering statements to the SEC, preparing Nanocap Market "listing pages," soliciting investors by purchasing leads on the Internet, and screening each investor that expresses interest. Id. ¶¶ 71–77. The SEC claims that C. Muehler has substantially assisted Muehler in the scheme and in violating the terms of the SEC Order by helping Muehler formally organize the AltaVista Companies, funding the companies' expenses, identifying potential customers, collecting and depositing customer fees, and allowing Muehler to sign agreements using her name. Id. ¶ 263. Moreover, C. Muehler has actively participated in convincing customers to sign up for services and facilitating agreements. Id. ¶¶ 263–67.

In its motion and a supporting declaration by counsel, the SEC asserts that the AltaVista scheme is ongoing, and that defendants have defrauded a married couple, referred to as Mr. and Mrs. A, as recently as February 2018, by advertising a fraudulent fixed income bond offering on the Internet. Motion at 11; Jasper Decl. ¶¶ 99–100. The SEC has also attached 95 exhibits in support of its motion, including sworn investigative testimony, e-mails strings, Issuer Agreements, and press releases.

### B. The SEC Order and Muehler's Past Schemes

The SEC alleges that defendants' current scheme is a reincarnation of the prior ASMG scheme. Compl. ¶ 5, 27. The ASMG scheme took place between August 2013

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-01677-CAS(SKx) | Date | April 4, 2018 |
| Title | SECURITIES AND EXCHANGE COMISSION v. STEVEN J. MUEHLER ET AL. | | |

and September 2015. Id. ¶ 27. In this scheme, Muehler and entities under his control made false and misleading statements to induce small business owners to sign up for broker-dealer services. Id. ¶ 28. Muehler also attempted to sell securities on behalf of his customers, but was unable to consummate any transactions before the SEC instituted enforcement proceedings against him. Id.

Muehler reached a settlement with the SEC, whereby he consented to the entry of the SEC Order. Id. ¶ 29. Under the terms of the settlement, Muehler admitted that he and his companies held themselves out as broker-dealers, offered to effect securities transactions for customers pursuant to Regulation A, and made false and misleading statements to persuade customers to sign up for his services. Id. ¶¶ 29–31. Muehler acknowledged that this conduct violated the federal securities laws. Id. ¶ 32. The SEC now asserts that Muehler has also been the subject of cease-and-desist orders from Minnesota and California for similar conduct, which were issued prior to the SEC's proceedings and which he concealed from prospective customers. Id. ¶ 34.

In addition to ordering Muehler to cease-and-desist from future violation of sections 10(b) and 15(a) of the Exchange Act and Rule 10b-5, the SEC Order barred Muehler from associating with a broker or dealer, participating in penny stock or ATS offerings, or acting as an officer or director of a public company. Id. ¶ 33. Muehler was also ordered to pay over $410,000 in disgorgement and civil penalties. Id. The SEC alleges that Muehler is currently violating the SEC Order, and has provided customers with false explanations of the order. Id. ¶¶ 4, 88, 98. The SEC alleges that contrary to Muehler's explanations of the order, Muehler has not paid the full monetary sanctions and is expressly prohibited from engaging in the services he purports to offer customers. Id. ¶ 98.

### C. Specific Instances of Misconduct

The SEC claims that defendants identify prospective customers through crowd-funding websites, and solicit them via marketing emails and materials that are similar to ones used in the ASMG scheme. Id. ¶¶ 48–49. The marketing emails describe the AltaVista Companies as an "Investment Banking Firm" that invests in startup companies through a "Fixed Income Fund." Id. ¶ 161. The materials further represent that defendants have relationships with numerous investors, describe AV Private Client as a FINRA-registered investment adviser, and claim to have seventeen "Private Equity

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-01677-CAS(SKx) | Date | April 4, 2018 |
| Title | SECURITIES AND EXCHANGE COMISSION v. STEVEN J. MUEHLER ET AL. | | |

Investment Funds" and one "Federal Fixed Income Mortgage Fund" through which the AltaVista Companies can invest. Id. ¶¶ 163, 167, 170. The Nanocap Market is also represented as an SEC-registered ATS that stands for "[i]ntegrity and [e]thical practices in order to enhance investor confidence." Id. ¶¶ 172, 174, 215.

The SEC alleges that when speaking with potential customers, Muehler has falsely claimed that defendants have helped customers raise millions of dollars from investors, that they have millions of dollars on hand to meet the Minimum Investment Commitment, and that they are established players in the securities industry. Id. ¶¶ 92–95. Whenever confronted with the SEC Order, Muehler has allegedly provided false and misleading explanations about it to customers. Id. ¶ 98. Moreover, the SEC claims defendants made these false and misleading statements knowingly, and with the intent of defrauding customers out of fees and securities. Id. ¶ 101.

In its complaint, the SEC cites five specific instances of defendants' misconduct: making false and misleading statements to induce companies A, B, C, and D into signing up for defendants' services; and creating an unregistered bond offering and soliciting investors to purchase those bonds. Id. ¶¶ 106, 134, 159, 212, 251–52.

## III. LEGAL STANDARDS

A preliminary injunction is an "extraordinary remedy." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7 (2008). The Ninth Circuit summarized the Supreme Court's recent clarification of the standard for granting preliminary injunctions in Winter as follows: "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Am. Trucking Ass'n, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009); see also Cal Pharms. Ass'n v. Maxwell–Jolly, 563 F.3d 847, 849 (9th Cir. 2009) ("Cal Pharm. I"). Alternatively, " 'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the Winter test are also met." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1132 (9th Cir.2011). A "serious question" is one on which the movant "has a fair chance of success on the merits." Sierra On–Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1421 (9th Cir.1984).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:18-cv-01677-CAS(SKx) | Date | April 4, 2018 |
|---|---|---|---|
| Title | SECURITIES AND EXCHANGE COMISSION v. STEVEN J. MUEHLER ET AL. | | |

The SEC asserts that it does not appear before the Court "as an ordinary litigant, but as a statutory guardian charged with safeguarding the public interest in enforcing the securities laws." SEC v. Management Dynamics, Inc., 515 F.2d 801, 808 (2d Cir. 1975). Instead, the SEC contends that a preliminary injunction is appropriate where the SEC has established (1) a prima facie case that the defendants have violated the securities laws, and (2) a reasonable likelihood that the defendants will repeat their violations. See SEC v. Unique Fin. Concepts, 196 F.3d 1195 (11th Cir. 1999); see also, SEC v. San Francisco Regional Center, LLC, No. 17-CV-00223-RS, 2017 WL 1092315 (N.D. Cal. Mar. 23, 2017); SEC v. Pac. West Capital Group, Inc., No. CV 15-2563-FMO-FFM, 2015 WL 9694808 (C.D. Cal. June 16, 2015); SEC v. Capital Cove Bancorp, LLC, No. 15-CV-980-JLS-JC, 2015 WL 9704076, at *5 (C.D. Cal. Sept. 1, 2015); SEC v. Schooler, 902 F. Supp. 2d 1341, 1345 (S.D. Cal. 2012).

While the Ninth Circuit "has not expressly adopted" this two-part standard, SEC v. Eadgear, Inc., No. 3:14-CV-04294-RS, 2014 WL 6900938, at *1 (N.D. Cal. Dec. 8, 2014), it has acknowledged a distinction between deciding a preliminary injunction authorized by statute of the United States to enforce and implement a Congressional policy and deciding the claims of two private litigants. See United States v. Odessa Union Warehouse Co-op, 833 F.2d 172, 174–75 (9th Cir. 1987) (finding that a motion for preliminary injunction brought pursuant to a federal statute "unquestionably affects the balance of factors"). "In statutory enforcement cases where the government has met the 'probability of success' prong of the preliminary injunction test, we presume it has met the 'possibility of irreparable injury' prong because the passage of the statute is itself an implied finding by Congress that violations will harm the public." United States v. Nutri-cology, Inc., 982 F.2d 394, 398 (9th Cir. 1992).

In the instant case, Congress has statutorily authorized the SEC to seek an injunction when it appears that anyone has engaged or is about to engage in conduct that violates securities laws. See 15 U.S.C. §§ 77t(b), 78u(d). In light of the SEC's statutory authority and the general acceptance of this standard by other district courts in the Ninth Circuit, the Court will apply the two-part test in determining whether a preliminary injunction should issue.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | |
|---|---|---|---|
| | CIVIL MINUTES – GENERAL | | 'O' |
| Case No. | 2:18-cv-01677-CAS(SKx) | Date | April 4, 2018 |
| Title | SECURITIES AND EXCHANGE COMISSION v. STEVEN J. MUEHLER ET AL. | | |

## IV. DISCUSSION

As an initial matter, the Court observes that the SEC's motion for preliminary and permanent injunction as to defendants Muehler, C. Muehler, and the AltaVista Companies is unopposed. Pursuant to Local Rule 7–12, defendants' failure to respond to the motion may be deemed consent to granting of the motion. See C.D. Cal. L.R. 7–12. Nonetheless, the Court examines the legal and factual bases for the SEC's motion.

### A. Whether The SEC Has Established a Prima Facie Case for Each AllegedViolation of Law

#### 1. Violations of Section 10(b) of the Exchange Act and Rule 10b-5

The Court first addresses whether the SEC has made a prima facie showing that Muehler and the AltaVista Companies are engaging in fraud in violation of Section 10(b) of the Exchange Act and Rule 10b-5. In particular, Section 10(b) of the Exchange Act makes it unlawful

> for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange . . . [t]o use or employ, in connection with the purchase or sale of any security . . . not so registered . . . any manipulative or deceptive device or contrivance.

15 U.S.C. § 78j(b). In addition, Rule 10b-5, which was promulgated under Section 10(b), specifically prohibits (a) the employment of any device, scheme, or artifice to defraud; (b) the making of an untrue statement of material fact or omission of a material fact; or (c) engaging in any act, practice or course of business which operates as a fraud or deceit upon any person. 17 C.F.R. § 240.10b-5.

To establish a prima facie claim for material misrepresentations or omissions in violation of Section 10(b) and Rule 10b-5, the SEC must demonstrate that "defendant (1) made a material misrepresentation or omission (2) in connection with the purchase of a sale of security (3) with scienter (4) in interstate commerce." SEC v. Platforms Wireless Int'l Corp., 617 F.3d 1072, 1092 (9th Cir. 2010) (citing SEC v. Phan, 500 F.3d 895, 907–08 (9th Cir. 2007)). To be liable for a scheme to defraud under these provisions, a defendant must have engaged in conduct that had the principal purpose and effect of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:18-cv-01677-CAS(SKx) | Date | April 4, 2018 |
|---|---|---|---|
| Title | SECURITIES AND EXCHANGE COMISSION v. STEVEN J. MUEHLER ET AL. | | |

creating a false appearance of fact in furtherance of the scheme. See Simpson v. AOL Time Warner, Inc., 452 F.3d 1040, 1048 (9th Cir.2006), vacated on other grounds sub nom. Avis Budget Grp. Inc. v. Cal. State Teachers' Ret. Sys., 552 U.S. 1162 (2008).

      First, the Court finds that the SEC sufficiently demonstrates that Muehler was acting on behalf of AltaVista Companies in soliciting customers and investors to participate in the Nanocap Market, and as such, he made the allegedly false and misleading statements regarding the Companies' investment authority and capabilities on behalf of the Companies. See Janus Capital Group, Inc. v. First Derivative Traders, 564 U.S. 135, 142 (2011) (reasoning that the "maker" of a statement for purposes of Section 10(b) and Rule 10b-5 is the person with ultimate authority over the statement, including its content and whether and how to communicate it). The SEC provided documentary evidence that Muehler was the organizer of the AltaVista Companies. Motion & Ex. 12. Furthermore, by his own admission, Muehler was responsible for the misleading marketing materials and sales scripts that were used to solicit customers and investors. Motion & Exs. 11, 15; Dkt. 5-1, Muehler Transcript ("TR") 109:3–14, 200:4–25, 201:1. Moreover, it appears likely that customers and investors found Muehler's misstatements and omissions to be material, as facts about a broker-dealer's past experience, ability to raise millions of dollars for customers, registration with the Commission, and access to numerous potential investors are essential factors that customers consider before deciding to enter the securities market or selecting a securities broker-dealer, underwriter, or ATS. See, e.g., TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976) (reasoning that a fact is material if there is a substantial likelihood that a reasonable investor would consider it important in making an investment decision); Motion & Exs. 19, 20, 25–26, 43, 45; Ex. 5 "Hathaway TR" 42:11–43:25, 51:20–52:12.

      Second, the Court concludes that these material misstatements were made in connection with a "contract to buy, purchase, or otherwise acquire" securities. 15 U.S.C. § 78(c). Muehler and the AltaVista Companies signed Issuer Agreements, promising to buy issuer preferred stock and giving the right to acquire common stock. See Motion at 14 & Ex. 26.

      Third, to support a finding of scienter, "the ultimate question is whether the defendant knew his or her statements were false, or was consciously reckless as to their truth or falsity." In re VeriFone Holdings, Inc. Securities Litig., 704 F.3d 694, 702 (9th Cir. 2012) (quoting Gebhart v. SEC, 595 F.3d 1034, 1042 (9th Cir.2010)). Here,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-01677-CAS(SKx) | Date | April 4, 2018 |
| Title | SECURITIES AND EXCHANGE COMISSION v. STEVEN J. MUEHLER ET AL. | | |

Muehler's deposition testimony demonstrates that he repeatedly made false statements with the knowledge that he and the AltaVista Companies had never helped customers raise millions of dollars, that none of the AltaVista Companies had registered with the Commission, that the Nanocap Market was never a registered ATS, and that defendants did not have connections to thousands of investors. Motion at 16–17; Muehler TR. Muehler actively attempted to conceal his identity by using false names or impersonating others in order to continue acting as an unregistered broker-dealer and mislead customers about his involvement with the AltaVista Companies. Muehler TR 198:155–200:7, 41:8–16, 42:7–9; 43:7–46:15, 63:5–20, 65:11–66:12, 156:15–157:4, 157:24–158:2.

     Fourth, the Court finds that the SEC has also established that defendants made these misrepresentations in interstate commerce. In this case, it appears that defendants solicited customers and investors through e-mails and telemarketing calls, and, in particular, successfully solicited companies located in Hawaii, Tennessee, Brazil, and Oregon. Motion & Exs. 25, 31, 45–47. The use of these instrumentalities of interstate commerce satisfies the fourth element under the above standard. See, e.g., SEC v. Baldassare, No. 11–CV–5970ARR-VVP, 2014 WL 2465622, at *6 (E.D.N.Y. May 29, 2014) ("[B]y using the telephone to orchestrate their fraudulent scheme, the defendants used an 'instrument' or 'instrumentality' of interstate commerce."); SEC v. Shehyn, No. 04-CV-2003-LAP, 2010 WL 3290977, at *4 (S.D.N.Y. Aug. 9, 2010) (use of "telephone and email in furtherance of his illegal scheme satisfies the connection to interstate communication requirement."). Accordingly, the Court concludes that the SEC adequately demonstrates that Muehler was able to conceal his identity and perpetuate the alleged securities fraud through telephone calls and e-mails with customers. Motion & Exs. 48, 61, 74.

     In addition, to establish that defendants engaged in a fraudulent scheme in violation of Section 10(b) and Rules 10b-5(a) and (c), the SEC must demonstrate that defendants engaged in conduct that had the principal purpose and effect of creating a false appearance of fact in furtherance of the scheme. See Simpson v. AOL Time Warner, Inc., 452 F.3d 1040, 1048 (9th Cir. 2006) vacated on other grounds sub nom., Avis Budget Group Inc. v. Cal. State Teachers' Ret. System, 552 U.S. 1162 (2008). Here, the SEC has demonstrated that Muehler and the AltaVista Companies engaged in a fraudulent scheme to solicit issuer customers, sign Issuer Agreements, and acquire issuer common stock, issuer preferred stock, and fees through the use of false names, forgery, and impersonation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL      'O'

| Case No. | 2:18-cv-01677-CAS(SKx) | Date | April 4, 2018 |
|---|---|---|---|
| Title | SECURITIES AND EXCHANGE COMISSION v. STEVEN J. MUEHLER ET AL. | | |

Accordingly, in light of the above considerations, the Court finds that the SEC has sufficiently demonstrated a prima facie case that defendants engaged in fraud and a fraudulent scheme in violation of Section 10(b) of the Exchange Act and Rule 10b-5.

## 2. Violations of Section 15(a) of the Exchange Act

Section 15(a) of the Exchange Act requires that broker-dealers register with the SEC if they intend to "effect any transaction in, or to induce or attempt to induce the purchase or sale of, any security." 15 U.S.C. § 78o(a). A broker is defined by the Exchange Act as "any person engaged in the business of effecting transactions in securities for the account of others." 15 U.S.C. § 78c(a)(4)(A). Neither Muehler nor the AltaVista Companies were registered broker-dealers. Muehler TR 42:7–9, 43:7–17; 63:5–20; 65:18–23.

In holding themselves out as broker-dealers, the Court finds that Muehler's and the AltaVista Companies' conduct is sufficient to establish a violation of Section 15(a). See SEC v. Schmidt, No. 71 Civ. 2008, 1971 WL 293, at 2 (S.D.N.Y. Aug. 26, 1971). Moreover, an individual who receives transaction-based compensation, solicits securities transactions, advertises for customers, or possesses customer funds and securities is considered to be "engaged in the business" of a broker-dealer. See, e.g., SEC v. Margolin, 92 Civ. 6307 (PKL), 1992 WL 279735, at *5 (S.D.N.Y. Sept. 30, 1992); SEC v. Century Investment Transfer Corp., 71 Civ. 3384, at *5–6 (S.D.N.Y. Oct. 5, 1971). Here, Muehler and the AltaVista Companies received transaction-based compensation in the form of a commission premised on investor funds raised for each customer. Motion & Exs. 28–30, 32, 49, 53, 64. In addition, it appears that defendants solicited small business owners with promises to help them raise millions of dollars by preparing offering statements; in turn, Muehler and the AltaVista Companies advertised these securities offerings to investors and retained customer securities as part of their compensation. Motion at 21. The record further demonstrates that defendants were able to sign contracts with at least 20 issuers, paying over $100,000 in what defendants themselves termed "broker-dealer" fees. Id.

In light of the above considerations, the Court finds that the SEC has established a prima facie case for violations of Section 15(a) of the Exchange Act insofar as the SEC's evidentiary submissions demonstrate that defendants were unlawfully operating as unregistered broker-dealers.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-01677-CAS(SKx) | Date | April 4, 2018 |
| Title | SECURITIES AND EXCHANGE COMISSION v. STEVEN J. MUEHLER ET AL. | | |

### 3. Aiding and Abetting

The Court next addresses whether the SEC demonstrates a prima facie case that C. Muehler aided and abetted Muehler's violations of the Exchange Act. To establish this prima facie case, the SEC must demonstrate (1) the existence of an independent primary wrong, (2) actual knowledge or reckless disregard by the alleged aider and abettor of the wrong and her role in furthering it, and (3) substantial assistance in the wrong. Levine v. Diamanthuset, Inc., 950 F.2d 1478, 1483 (9th Cir. 1991) (citing Roberts v. Peat, Marwick, Mitchell & Co., 857 F.2d 646, 652 (9th Cir. 1988)).

As an initial matter, the Court finds that the SEC has sufficiently demonstrated the existence of an independent primary wrong by establishing a prima facie case for violations of Sections 10(b) and 15(a). The remaining issues to be resolved are whether C. Muehler acted with the requisite scienter and whether her actions constitute substantial assistance.

The SEC alleges that C. Muehler had knowledge of the SEC Order and the illegality of the ASMG scheme. Motion at 22; see Muehler TR 189:6–13, 195:21–197:17. Upon review of the record, the Court concludes that given C. Muehler's knowledge of the illegality of the ASMG scheme, C. Muehler knew, or was reckless in not knowing, of Muehler's and the AltaVista Companies' alleged current violations of the Exchange Act. Additionally, it appears that C. Muehler was actively involved in organizing the AltaVista Companies, soliciting customers and signing Issuer Agreements, depositing customer payments, and purchasing investor leads. Motion & Exs. 39, 58, 60–61, 71. Accordingly, the Court finds that the SEC has established a prima facie case of aider and abettor liability with respect to C. Muehler.

### 4. Violations of Section 5(c) of the Securities Act

The Court next considers whether the SEC has demonstrated a prima facie case that defendants violated Section 5(c) of the Securities Act. Section 5(c) of the Securities act makes it unlawful

> for any person . . . to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed . . .

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-01677-CAS(SKx) | Date | April 4, 2018 |
| Title | SECURITIES AND EXCHANGE COMISSION v. STEVEN J. MUEHLER ET AL. | | |

15 U.S.C. § 77e(c). A prima facie case of a Section 5(c) violation is established by a showing that (1) no registration statement was filed or in effect regarding the securities offered or sold; (2) defendants directly or indirectly sold, offered to sell, or offered to buy the securities; and (3) interstate means were used in connection with the offer or sale. See SEC v. CMKM Diamonds, Inc., 729 F.3d 1248, 1255 (9th Cir. 2013). If the SEC introduces sufficient evidence to make such a showing, defendants then bear the burden of proving entitlement to an exemption. Id. (quoting SEC v. Murphy, 626 F.2d 633, 641 (9th Cir. 1980)).

The SEC argues that with respect to the AltaVista Bonds, the bond offering was never registered with the SEC; the bonds were offered using interstate telephone calls; and Muehler was responsible for the solicitation of investors, the sales scripts used to pitch the bonds, and for continuing to offer the AltaVista Bonds. Motion at 23. Moreover, the government contends that no "intrastate exemption" applies to the offer of the AltaVista Bonds. Id. at n.8.

As determined *supra*, the Court finds that the SEC has sufficiently demonstrated a prima facie case that defendants failed to file a registration statement for the securities offered, that defendants continue to offer the AltaVista Bonds, and that these bonds have been offered using interstate commerce—including interstate telephone calls. Moreover, the Court observes that the SEC, on or about February 15, 2018, received a complaint from "Mr. and Mrs. A"—two individuals who appear to be the most recent victims of defendants' alleged fraudulent bond offering. See Jasper Decl. ¶¶ 99–100. The Court finds that these allegations and evidence demonstrating ongoing unregistered bond offerings—offered through interstate means—are sufficient to state a prima facie claim of a Section 5(c) violation.

### B. Whether the SEC Has Demonstrated a Reasonable Likelihood that Defendants Will Repeat These Violations

Once the SEC has established a prima facie case of the alleged Securities Act and Exchange Act violations, whether a preliminary injunction should issue turns on the likelihood that defendants will commit future violations. The likelihood of future violations depends on the totality of the circumstances, and the existence of past violations may give rise to an inference that there will be violations in the future. See SEC v. Murphy, 626 F.2d 633, 655 (9th Cir. 1980). In predicting likelihood, a court may

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | |
|---|---|---|---|
| | **CIVIL MINUTES – GENERAL** | | **'O'** |
| Case No. | 2:18-cv-01677-CAS(SKx) | Date | April 4, 2018 |
| Title | SECURITIES AND EXCHANGE COMISSION v. STEVEN J. MUEHLER ET AL. | | |

consider the degree of scienter, the isolated or recurrent nature of the conduct, the effect of the defendant's occupation, and the sincerity of defendant's assurances against future violations. Id.

In the instant case, it appears that Muehler has already admitted to violating the very same securities laws at issue here through his consent to entry of the 2016 SEC Order. Moreover, the SEC has provided evidence that Muehler continues to violate these laws—as a three-time recidivist—under a new scheme that employs the AltaVista Companies to defraud small business owners. In particular, it appears that Muehler, with substantial assistance from C. Muehler, ignored the prohibitions from the SEC and state-issued cease-and-desist orders and misinformed customers and investors regarding the effect of these orders.

Accordingly, in light of the SEC's allegations and the evidence submitted therewith, the Court finds it appropriate to conclude that Muehler's past violations and ongoing conduct demonstrate the likelihood of future violations of the Securities Act and Exchange Act.

## V. CONCLUSION

In accordance with the foregoing, the Court hereby **GRANTS** the SEC's motion for a preliminary injunction. The Court directs the SEC to submit a form of order consistent with this ruling.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |