**CIVIL MINUTES – GENERAL**  'O'

| | | | |
|---|---|---|---|
| Case No. | 2:18-cv-01677-CAS-SKx | Date | April 17, 2019 |
| Title | SECURITIES AND EXCHANGE COMISSION v. STEVEN J. MUEHLER ET AL. | | |

Present: The Honorable **CHRISTINA A. SNYDER**

| Catherine Jeang | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:  Attorneys Present for Defendants:
Not Present  Not Present

**Proceedings:** (IN CHAMBERS) - DEFENDANT CLAUDIA MUEHLER'S MOTION FOR SUMMARY JUDGMENT (Dkt. 72, filed March 19, 2019)

The Court finds this motion appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. Local Rule 7-15. Accordingly, the hearing date of April 8, 2019 is vacated, and the matter is hereby taken under submission.

## I. INTRODUCTION

On February 28, 2018, the Securities and Exchange Commission ("SEC") filed a civil enforcement action against defendants Steven J. Muehler, Claudia Muehler, Koorosh "Danny" Rahimi ("Rahimi"), AltaVista Capital Markets, LLC, AltaVista Private Client, LLC, and AltaVista Securities, LLC (collectively, the "AltaVista Companies"). Dkt. 1 ("Compl."). The SEC asserts claims against defendants for (1) violations of Section 5(c) of the Securities Act of 1933, 15 U.S.C. § 77q(a) (the "Securities Act"), for (2) violations of Sections 10(b), 15(a), and 20(e) of the Exchange Act of 1934, 15 U.S.C. § 78j(b), 78o, 78t (the "Exchange Act"), and for (3) violations of Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. Claudia Muehler filed an answer to the complaint on March 27, 2018. Dkt. 29.

The gravamen of the SEC's complaint is that defendants have been operating an unregistered broker-dealer and securities fraud scheme in contravention of the securities laws and a prior cease-and-desist order issued by the SEC against Muehler for similar misconduct in 2016. Compl. Ex. B ("SEC Order"). The SEC requested the Court to issue a preliminary injunction enjoining defendants Steven Muehler, Claudia Muehler, and the AltaVista Companies from committing further violations of federal securities

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:18-cv-01677-CAS-SKx | Date | April 17, 2019 |
| Title | SECURITIES AND EXCHANGE COMISSION v. STEVEN J. MUEHLER ET AL. | | |

laws and from violating the cease-and-desist requirements of the SEC Order. Dkts. 4–17 ("MPI"). The Court granted the SEC's motion for a preliminary injunction on April 4, 2018. Dkt. 31 ("Order"). Steven Muehler subsequently consented to a final judgment in this action and admitted all of the factual allegations in the complaint, including those directed at his wife, Claudia Muehler. Dkt. 41.

On March 29, 2019, Claudia Muehler, acting pro se, filed the instant motion for summary judgment. Dkt. 72 ("Mot."). Although she captions her motion as one for summary judgment, she moves to dismiss the SEC's complaint against her under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Id. at 1. The SEC filed an opposition on April 1, 2019. Dkt. 73 ("Opp'n"). Claudia Muehler did not file a reply.

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II. BACKGROUND

The SEC alleges the following facts.

### A. The AltaVista Companies and the Current Scheme

The SEC alleges that Muehler and his wife, Claudia Muehler, co-founded the AltaVista Companies in late 2015 and continue to operate these companies out of their condominium in Marina Del Rey, California. Compl. ¶¶ 12–17, 22–24, 36. Despite Steven Muehler disclaiming his ownership and management roles in the AltaVista Companies, the SEC alleges that Steven Muehler maintains control of the AltaVista Companies and their operations, often treating them "as interchangeable parts of a single enterprise under his control." Id. ¶¶ 37–39.

The SEC's primary allegation is that defendants have been engaging in the business of a broker-dealer through the instrumentalities of interstate commerce, offering unregistered securities on an unregistered "alternative trading system" ("ATS")[1] called

---

[1] An ATS is an unregulated market where investors can buy and sell stock. Id. ¶ 46. Every ATS must be registered with the SEC. Id. The SEC alleges that Steven Muehler falsely markets the Nanocap Market as an "SEC-registered alternative trading system," but according to the SEC it has never been registered with the SEC. Id. ¶¶ 46–47.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-01677-CAS-SKx | Date | April 17, 2019 |
| Title | SECURITIES AND EXCHANGE COMISSION v. STEVEN J. MUEHLER ET AL. | | |

the "Nanocap Market," and are committing these securities violations by making various false and misleading statements about the AltaVista Companies' experience, capabilities, and association with Steven Muehler. Id. ¶¶ 4–8. Moreover, the SEC alleges that none of the defendants have ever registered with the SEC in any capacity. Id. ¶¶ 14, 17, 22–24, 84–86. The SEC asserts that this "AltaVista scheme" is virtually indistinguishable from Steven Muehler's previous scheme, the "Alternative Securities Market Group" ("ASMG") scheme, which was the subject of the prior SEC Order. Compl. ¶ 25, 27–28.

In particular, the SEC alleges that Steven Muehler, with substantial assistance from his wife, Claudia Muehler, has been operating this unregistered broker-dealer scheme through the AltaVista Companies since November 2015, whereby the Companies solicit small business owners and potential investors. Id. ¶¶ 8, 25–26, 89, 91–94. Steven Muehler allegedly induced customers into signing up for the AltaVista Companies' services by marketing the Companies as a combination of underwriting, broker-dealer, and ATS services that are well-established players in the securities industry and have connections to thousands of investors. Id. ¶¶ 43–44, 95. Since their inception, the AltaVista Companies have allegedly signed "Issuer Agreements" with more than 20 customers and have collected approximately $100,000 in fees for their unlawful services. Id. ¶ 70.

Through the Issuer Agreements, defendants allegedly purport to offer several services such as examining customers' financial statements and business plans, preparing securities offerings, identifying and screening potential investors, and marketing securities to investors. Id. ¶ 57. Defendants also assist customers in obtaining qualification from the SEC under Regulation A of the Securities Act, and allegedly offer to underwrite customers' offerings of Customer Preferred Stock. Id. ¶¶ 58, 61. Qualified customers' securities are then listed on the Nanocap Market that was created, developed, and operated by Steven Muehler. Id. ¶¶ 45, 59. The Issuer Agreements also allegedly include a Minimum Investment Commitment guarantee that falsely promises that defendants can raise minimum levels of capitalization from investors, or, in the alternative, an AltaVista Investment Fund will purchase enough Customer Preferred Stock to meet the Minimum Investment Commitment. Id. ¶ 62–64. The SEC alleges that defendants falsely claim to have millions of dollars on hand in the "AltaVista Investment Funds;" however, the AltaVista Investment Funds allegedly have minimal assets and no investors. Id. ¶¶ 44, 63–64, 94. The SEC further alleges that as compensation for these purported services, defendants have received upfront fees ranging from $10,000 to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-01677-CAS-SKx | Date | April 17, 2019 |
| Title | SECURITIES AND EXCHANGE COMISSION v. STEVEN J. MUEHLER ET AL. | | |

$20,000; monthly fees ranging from $400 to $1,500 per month; "Broker-Dealer Fees" equal to a certain percentage of the funds raised from investors; and, an equity interest in each issuer customer upon the occurrence of certain milestones in the process of successful capitalization. Id. ¶¶ 67, 69.

The SEC asserts that Steven Muehler has been personally involved with providing services to customers by structuring proposed offerings of customers' securities, drafting and submitting Regulation A offering statements to the SEC, preparing Nanocap Market "listing pages," soliciting investors by purchasing leads on the Internet, and screening each investor that expresses interest. Id. ¶¶ 71–77. The SEC claims that Claudia Muehler has substantially assisted Steven Muehler in the scheme and in violating the terms of the SEC Order by helping Steven Muehler formally organize the AltaVista Companies, funding the companies' expenses, identifying potential customers, collecting and depositing customer fees, and allowing Steven Muehler to sign agreements using her name. Id. ¶ 263. Moreover, Claudia Muehler has actively participated in convincing customers to sign up for services and facilitating agreements. Id. ¶¶ 263–67.

In its motion for preliminary injunction, the SEC asserted that the AltaVista scheme was ongoing, and that defendants had defrauded a married couple, referred to as Mr. and Mrs. A, in February 2018, by advertising a fraudulent fixed income bond offering on the Internet. MPI at 11. The SEC also attached 95 exhibits in support of its motion for preliminary injunction, including sworn investigative testimony, e-mails strings, Issuer Agreements, and press releases.

### B. The SEC Order and Steven Muehler's Past Schemes

The SEC alleges that defendants' current scheme is a reincarnation of the prior ASMG scheme. Compl. ¶ 5, 27. The ASMG scheme took place between August 2013 and September 2015. Id. ¶ 27. In this scheme, Steven Muehler and entities under his control made false and misleading statements to induce small business owners to sign up for broker-dealer services. Id. ¶ 28. Steven Muehler also attempted to sell securities on behalf of his customers, but was unable to consummate any transactions before the SEC instituted enforcement proceedings against him. Id.

Steven Muehler reached a settlement with the SEC, whereby he consented to the entry of the SEC Order. Id. ¶ 29. Under the terms of the settlement, Steven Muehler admitted that he and his companies held themselves out as broker-dealers, offered to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-01677-CAS-SKx | Date | April 17, 2019 |
| Title | SECURITIES AND EXCHANGE COMISSION v. STEVEN J. MUEHLER ET AL. | | |

effect securities transactions for customers pursuant to Regulation A, and made false and misleading statements to persuade customers to sign up for his services. Id. ¶¶ 29–31. Steven Muehler acknowledged that this conduct violated the federal securities laws. Id. ¶ 32. The SEC also asserts that Steven Muehler has also been the subject of cease-and-desist orders from Minnesota and California for similar conduct, which were issued prior to the SEC's proceedings and which he concealed from prospective customers. Id. ¶ 34.

In addition to ordering Steven Muehler to cease-and-desist from future violation of sections 10(b) and 15(a) of the Exchange Act and Rule 10b-5, the SEC Order barred Steven Muehler from associating with a broker or dealer, participating in penny stock or ATS offerings, or acting as an officer or director of a public company. Id. ¶ 33. Steven Muehler was also ordered to pay over $410,000 in disgorgement and civil penalties. Id. The SEC alleges that Steven Muehler violated the SEC Order and provided customers with false explanations of the order. Id. ¶¶ 4, 88, 98. The SEC alleges that contrary to Steven Muehler's explanations of the order, he has not paid the full monetary sanctions and is expressly prohibited from engaging in the services he purports to offer customers. Id. ¶ 98.

## III. LEGAL STANDARDS

### A. Rule 12(b)(6)

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. (internal citations omitted).

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-01677-CAS-SKx | Date | April 17, 2019 |
| Title | SECURITIES AND EXCHANGE COMISSION v. STEVEN J. MUEHLER ET AL. | | |

from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

### B. Rule 56

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-01677-CAS-SKx | Date | April 17, 2019 |
| Title | SECURITIES AND EXCHANGE COMISSION v. STEVEN J. MUEHLER ET AL. | | |

record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631, n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV. DISCUSSION

As an initial matter, the Court observes that Claudia Muehler's motion primarily consists of denials of her involvement in the alleged scheme and her knowledge of the SEC Order barring Steven Muehler from engaging in the same misconduct that gave rise to the prior SEC action against him. Claudia Muehler does not proffer any evidence in support of her motion.

In granting the SEC's motion for preliminary injunction, the Court found that the SEC had established a prima facie case for each alleged violation of law. Order at 11–13. And with respect to Claudia Muehler, the Court found that the SEC had demonstrated a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-01677-CAS-SKx | Date | April 17, 2019 |
| Title | SECURITIES AND EXCHANGE COMISSION v. STEVEN J. MUEHLER ET AL. | | |

prima facie case that Claudia Muehler aided and abetted Steven Muehler's violations of the Exchange Act. Id. at 12. To establish this prima facie case, the SEC had to demonstrate (1) the existence of an independent primary wrong, (2) actual knowledge or reckless disregard by the alleged aider and abettor of the wrong and her role in furthering it, and (3) substantial assistance in the wrong. Levine v. Diamanthuset, Inc., 950 F.2d 1478, 1483 (9th Cir. 1991) (citing Roberts v. Peat, Marwick, Mitchell & Co., 857 F.2d 646, 652 (9th Cir. 1988)). The Court found that the SEC had sufficiently demonstrated the existence of an independent primary wrong by establishing a prima facie case for the other defendants' violations of Sections 10(b) and 15(a). Id. The Court then found that the SEC had sufficiently demonstrated that Claudia Muehler had knowledge of the SEC Order and the illegality of the ASMG scheme, and therefore, she knew, or was reckless in not knowing, of Steven Muehler and the AltaVista Companies' alleged violations of the Exchange Act. Id. The Court also noted that it appeared that Claudia Muehler was actively involved in organizing the AltaVista Companies, soliciting customers, signing Issuer Agreements, depositing customer payments, and purchasing investor leads. Id.

In light of the Court's previous finding that the SEC had established a prima facie case of aider and abettor liability with respect to Claudia Muehler, the Court finds that Claudia Muehler's motion, whether it is construed as a motion to dismiss or a motion for summary judgment, is without merit. To the extent Claudia Muehler's motion is to be construed as a motion to dismiss, the Court must accept SEC's allegations as true and disregard Claudia Muehler's denials. And to the extent that her motion is to be construed as a motion for summary judgment, the Court finds that Claudia Muehler's unsupported denials are insufficient to demonstrate that there are no genuine issues of material fact or that she is entitled to judgment as a matter of law.

## V.    CONCLUSION

In accordance with the foregoing, the Court hereby **DENIES** Claudia Muehler's motion for summary judgment.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |